IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

RONALD BECKWITH,                  )       CASE NO. 1:18cv2371
                                  )
                Petitioner,       )
                                  )       JUDGE CHRISTOPHER BOYKO
        v.                        )
                                  )       MAGISTRATE JUDGE
DAVE MARQUIS,                     )       JONATHAN D. GREENBERG
Warden                            )
                                  )       **REPORT & RECOMMENDATION**
                Respondent.       )

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition Ronald Beckwith  ("Beckwith" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Beckwith is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Beckwith,* Cuyahoga County Court of Common Pleas Case No. CR-14-585247-A.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d

439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The State

Appellate Court summarized the facts underlying Beckwith's conviction as follows:

> {¶ 7} On September 21, 2012, the victim left his apartment and a short time later was shot and killed. Beckwith was later arrested and indicted on May 21, 2014, for the victim's murder. During pretrials, Beckwith filed several pro se motions. Beckwith also notified the trial court that his appointed counsel was not allowed to engage in any plea negotiation with the state. On December 8, 2014, Beckwith was referred to the Court Psychiatric Clinic for an evaluation for sanity at the time of the act and competency to stand trial. The clinic opined that Beckwith was both sane and competent, and the parties stipulated to this finding on January 7, 2015.

> {¶ 8} The case proceeded to a jury trial where several witnesses testified that they observed Beckwith and the victim engaging in an argument when Beckwith pulled out a gun and shot the victim. Malinda Banks ("Banks"), who was the victim's girlfriend, stated that she left the apartment to go to the store. When Banks returned, she found the victim on the ground. It was during this time that the victim told Banks that "Ron shot him." Tr. 537.

> {¶ 9} Another witness, Darrell Simpson ("Simpson"), testified that he saw Beckwith and the victim arguing. Simpson walked away and then heard a gunshot. At the moment of the shot, Beckwith was at the victim's side. Simpson then saw Beckwith running up the street and the victim on the ground. Simpson testified that he did not come forward because he was threatened not to come downtown for any reason or "you know what's up." Tr. 627. Simpson at that point did not want to get involved.

> {¶ 10} Antoine Talley ("Talley") was in a holding cell with Beckwith. Talley testified that while in a holding cell with Beckwith, Beckwith discussed his case. Beckwith told Talley that "he got into an altercation with the dude, he pulled up to the store and seen him there, he got out and that's when they got in an altercation and he shot him up." Tr. 660-661.

> {¶ 11} Another witness, Samson Hughley ("Hughley"), testified that he went to the corner store with his son. While his son was in the store, he was on the corner when he saw two males running across the street. One of them had a gun in his hand. Hughley thought they were going to rob him. When his son came out of the store, he told his son to ride his bike home. Hughley began walking home behind his son. While he was walking, he heard a gunshot and observed two men running across the street. He then saw the victim on the ground. Hughley testified that Beckwith was the man he saw carrying the gun and the other man was Beckwith's cousin. Before trial, Hughley gave a

statement to the police. This statement was memorialized in writing. After closing arguments and the jury charge, the jury was given numerous exhibits. The statement that Hughley gave to the police was attached to an autopsy report.

{¶ 12} Justine McGeever ("McGeever") testified that he did not remember making a statement to the police concerning the shooting. The prosecutor had a signed statement from October 2012, but again McGeever stated he did not remember it.  The court called a sidebar, and after discussions, the court instructed the jury regarding a mechanism in the law that allows the prosecutor to examine their own witness as if on cross-examination. The court then permitted the state to cross-examine McGeever, and his statement was read into evidence. Defense counsel had no objection to the cross-examination of McGeever by the state and did not cross-examine McGeever on behalf of the defense.

*State v. Beckwith*, No. CA-102544, 2016 WL 3092091, at \*\*2-3 (Ohio App. 8th Dist. May 26, 2016).

## II. Procedural History

### A.    Trial Court Proceedings

On May 21, 2014, the Cuyahoga County Grand Jury indicted Beckwith on the following charges:

- one count of Aggravated Murder, with two firearm specifications (R.C. 2903.01(A)) (Count 1);

- one count of Murder, with two firearm specifications (R.C. 2903.02(B)) (Count 2);

- one count of Felonious Assault, with two firearm specifications, a Notice of Prior Conviction specification and a Repeat Violent Offender specification (R. C. 290311(A)(1)) (Count 3);

- one count of Felonious Assault, with two firearm specifications, a Notice of Prior Conviction specification and a Repeat Violent Offender specification (R. C. 290311(A)(2)) (Count 4); and

- one count of Having Weapons While Under Disability (R.C. 2923.13(A)(2)) (Count 5).

3

(Doc. No. 9-1, Ex. 1.)  Beckwith entered pleas of "not guilty" to all charges.  (Doc. No. 9-1, Ex. 2.) On May 29, 2014,  He filed a notice of appearance and notice of rescission of pleas, informing the Trial Court that he would proceed in a "hybrid capacity as a second chair *pro se* litigant" with his court-appointed attorney remaining as lead counsel.  (Doc. No. 9-1, Ex. 3.)  He rescinded his "not guilty" pleas to the indictment and entered a "Denial" to each count in the indictment.  *Id*.

On December 8, 2014, Beckwith's counsel requested that the Trial Court refer Beckwith to the Court Psychiatric Clinic for an evaluation of his competency to stand trial and his sanity at the time of the act.  (Doc. No. 9-1, Ex. 4)  The Trial Court granted the motion and the trial date was continued pending the findings of the Court Psychiatric Clinic. *Id*.  At the same hearing, Beckwith's court-appointed attorney made an oral motion to withdraw his representation of Beckwith.  *Id*.  The Trial Court granted the motion, and appointed a new attorney to represent Beckwith.  *Id*.

The Court Psychiatric Clinic opined that Beckwith was both sane and competent, and the parties stipulated to this finding on January 7, 2015. (Doc. No. 9-1, Ex. 5.)

The trial was scheduled to begin January 8, 2015.  Prior to commencement of voir dire, Beckwith was given the opportunity to waive jury trial for the Repeat Violent Offender specification and the Having Weapons While Under Disability charge.  (Doc. No 9-1, Ex. 6.)  Against the advice of counsel, he refused to sign the waiver and rejected any plea offer by State.  *Id.*

The case proceeded to jury trial.  After the State presented its case, Beckwith, through counsel, moved the Trial Court to dismiss the case under Crim. Rule 29.   (Doc. No. 9-1, Ex. 7.) This motion was denied.  *Id.*  On January 15, 2015, the defense completed its presentation, and Beckwith renewed his motion for dismissal under Crim. Rule 29.  *Id.*  Again, the Trial Court denied the motion.  *Id.*

4

On January 20, 2015, the jury returned its verdict, finding Beckwith guilty of one count of Murder (R.C. 2903.02 (A)) (a lesser-included offense of Count 1) including both firearm specifications; one count of Murder (R.C. 2903.02(B)) (Count 2) including both firearm specifications; one count of Felonious Assault (R.C. 2903.11(A)(1)) (Count 3) including both firearm specifications and repeat violent offender specification; one count of Felonious Assault (R.C. 2903.11(A)(2)) (Count 4) including both firearm specifications and the repeat violent offender specification; one count of Having Weapons While Under Disability (R.C. 2923.13(A)(2)) (Count 5). (Doc. No. 9-1, Ex. 8.)

On January 21, 2015, the Trial Court held a sentencing hearing. Beckwith was sentenced to fifteen years to life for each of the two convictions of Murder (Counts 1 and 2); seven years for each of the two convictions of Felonious Assault (Counts 3 and 4); and two years for the conviction of Having Weapons While Under Disability (Count 5). The Trial Court merged the one-year and three-year firearm specifications in Counts 1, 2, 3 and 4 into a single three year sentence. The sentences for Counts 2, 3 and 4 were merged with Count 1. The Trial Court ordered all sentences to be served consecutively for an aggregate prison term of twenty years to life. (Doc. No. 9-1, Ex. 9.)

**B.      Direct Appeal**

Beckwith, through counsel, filed a timely notice of appeal to the Ohio Eighth District Court of Appeals, Cuyahoga County. (Doc. No. 9-1, Ex. 10.)   In his appellate brief, he raised the following assignments of error:

> I.      The trial court erred in allowing the State to cross-examine its own witness absent a showing of surprise and affirmative damage.
>
> II.     The trial court erred in allowing the State to elicit multiple hearsay

5

statements and the cumulative effect of these statements denied Appellant's right to a fair trial.

III.     A witness's unadmitted statement that was included with the admitted exhibits and given to the jury created a presumption of prejudice that warrants a new trial.

IV.     Appellant was denied his right to effective assistance of counsel.

V.     Appellant's convictions were against the manifest weight of the evidence.

(Doc. No. 9-1, Ex. 11.)  The State filed a brief in response.  (Doc. No. 9-1, Ex. 12.)

On February 4, 2016, the Ohio Court of Appeals affirmed Beckwith's convictions.  *State v. Beckwith*, No. CA15-102544, 2016 WL 542617 (Ohio App. 8th Dist. Feb. 4, 2016).  On February 16, 2016, Beckwith, acting through counsel, moved for reconsideration and *en banc* review.(Doc. No. 9-1, Ex. 14.)  The State responded in opposition. (Doc. No. 9-1. Ex. 15.)  On May 26, 2016, the Ohio Court of Appeals granted the motion for reconsideration and ordered the February 4, 2016 entry vacated. (Doc. No. 9-1, Ex. 16.)  The court substituted its original entry with one released May 26, 2016, which also affirmed the judgment of the Trial Court. *State v. Beckwith*, No. CA15-102544, 2016 WL 3092091 (Ohio 8th App. Dist. May 26, 2016). The Ohio Court of Appeals  denied the motion for *en banc* review. (Doc. No. 9-1, Ex. 18.)

On July 21, 2016, Beckwith, proceeding *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.   (Doc. No. 9-1, Ex. 19, 20.)  In his Memorandum in Support of Jurisdiction, Beckwith raised the following Propositions of Law:

I.     A Defendant's right to a fair trial and Due Process under the 6th and 14th Amendment of the United States [sic] is violated when the trial court allows the State to cross-examine its own witness without showing surprise and/or affirmative defense.

II     When the trial court allows the State to elicit multiple hearsay

6

statements the cumulative effect of these statements denies a Defendant the right to a fair trial.

III.    A Defendant is entitled to a new trial when unadmitted statements are included with admitted exhibits and given to the jury creating a presumption of Prejudice.

IV.    A Defendant was denied his right to effective assistance of counsel.

V.    A Defendant's conviction is against the manifest weight of the evidence when state witnesses contradict each other on key pieces of their testimony.

(*Id*.)

On July 29, 2016, Beckwith's court-appointed counsel filed an Amended Notice of Appeal and Amended Memorandum in Support of Jurisdiction. (Doc. No. 9-1, Ex. 21, 22.). In his amended memorandum, Beckwith set forth the following propositions of law:

I.    The trial court, in allowing the State to elicit multiple hearsay statements, violated Appellant's Constitutional right to a fair trial.

II.    A witness's unadmitted statement that was included with the admitted exhibits and given to the jury created a presumption of prejudice that violated Appellant's Constitutional right to a fair trial and warrants a new trial.

III.    Appellant was denied his Constitutional right to effective assistance of counsel.

(Doc. No. 9-1, Ex. 22.)

On January 25, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac .R. 7.08(B)(4).  *State v. Beckwith*, 67 N.E.3d 823 (Ohio 2017).

**C.    Post-Conviction Filings**

On September 3, 2015, Beckwith, proceeding *pro se*, filed two petitions with identical claims in the Trial Court to vacate or set aside judgment of conviction or sentence. (Doc. No. 9-1, Ex. 24, 25.)  Beckwith's sole ground to vacate or set aside judgment is that trial counsel had provided

ineffective assistance for not calling defense witnesses during trial:

> 1. "I asked my counsel to call several witnesses on my behalf and none was called."

*Id.*  The Trial Court denied the petitions on September 14, 2015. (Doc. No. 9-1, Ex. 26.)

On November 2, 2015, Beckwith filed an objection to the judgment. (Doc. No. 9-1, Ex. 27.) On May 19, 2017, more than 18 months after his initial filing, he requested findings of fact and conclusions of law regarding the denial of his post-conviction petition.(Doc. No. 9-1, Ex. 28.)  On May 23, 2017, the Trial Court ordered the State to respond to Beckwith's petition. On June 7, 2017, the State in response filed proposed findings of fact and conclusions of law. (Doc. No. 9-1, Ex. 29.) On October 6, 2017, the Trial Court denied the petition without a hearing, issuing findings of fact and conclusions of law which found Beckwith's petition barred by *res judicata* and determined that the petition had failed to establish substantive grounds for relief.  (Doc. No. 9-1, Ex. 30.)

On November 9, 2017, Beckwith, proceeding *pro se*, appealed to the Ohio Eighth District Court of Appeals, Cuyahoga County. (Doc. No. 9-1, Ex. 31.)  In his brief, he raised the following assignments of error:

> 1. Did the trial court abuse its discretion by denying Appellant's timely filed post-conviction petition *sua sponte* which is a clear violation of the procedural mandates of Ohio Revised Code §2953.21?
>
> 2. Did the trial court abuse its discretion by denying Appellant's timely filed post-conviction petition on the doctrine of res judicata where the affidavit evidence presented in Appellant's post-conviction petition to support his claim of ineffective assistance of counsel was not part of the trial court's record?

(Doc. No. 9-1, Ex. 32.)  The State filed a brief in opposition. (Doc. No. 9-1, Ex. 33.)  Beckwith replied.  (Doc. No. 9-1, Ex. 34.)  On June 7, 2018, the Ohio Court of Appeals affirmed the judgment of the trial court.  *State v. Beckwith*, No. 106479, 2018 WL 2928067 (Ohio App. 8th Dist. June 7,

2018).

**D.     Federal Habeas Petition**

On September 28, 2018,[1] Beckwith filed a Petition for Writ of Habeas Corpus in this Court

and asserted the following grounds for relief:

> **GROUND ONE**:  A witness unadmitted statement that was included with the
> admitted exhibits and given to the Jury.
>
> > **Supporting Facts**:  A written statement of Samson Hughley was
> > stapled to the back of the Autopsy Report and sent back with the
> > jury to aid in their deliberations.
>
> **GROUND TWO**:  State allowed to elicit multiple hearsay statements
>
> > **Supporting Facts**:  Simpson and Hughley both testified regarding
> > rumors.  Antoine Talley's counsel testified that his client over
> > heard someone talking about my case before "Talley" testified.
>
> **GROUND THREE**:  Denied effective assistance of counsel.
>
> > **Supporting Facts:**  I asked for witnesses on my behalf and was denied. A
> > lady that was brought up by Samson Hughley and claimed he was with the
> > day of said crime wrote a statement stating that she was not at the crime and
> > my counsel never interviewed her even though she was the lady that runs the
> > store the other witnesses claim to have made purchases at.

(Doc. 1 at 5-8.)

On February 20, 2019, Warden Dave Marquis ("Respondent") filed his Return of Writ. (Doc.

No. 9.)  Beckwith filed a Traverse on May 6, 2019.  (Doc. No. 13.)

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner
delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the
Petition herein did not arrive at the Court for filing until October 11, 2018, Beckwith states
that he placed it in the prison mailing system on September 28, 2018.  (Doc. No. 1 at 15.)
Thus, the Court will consider the Petition as filed on September 28, 2018.

### III.  Exhaustion and Procedural Default

**A.**     **Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138 39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731  32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  The Antiterrorism and Effective Death Penalty Act's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n.28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.*  Thus, if an Ohio petitioner failed to raise a claim which could have been raised on direct appeal, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner

---

judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138 39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219 20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually

innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749 50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough     a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

**B.     Application to Petitioner**

Respondent asserts that all three of Petitioner's claims are procedurally defaulted.  (Doc. No. 9 at 18, 21, 28.)  He asserts that Grounds One and Two are defaulted because they were only presented as violations of state law in the state appellate process, and therefore cannot be fairly presented as violations of federal law in this forum.  (*Id.* at 18, 21.)  He asserts that Ground Three is procedurally defaulted because, although Beckwith raised an ineffectual assistance of counsel claim on direct appeal, that claim was based on a different factual theory than the claim asserted in his federal habeas Petition.  (Doc. No. 9 at 29.)

Beckwith responds that because he cited a federal case in support of  Ground One of his Petition his brief to the Ohio Court of Appeals, he put the State Appellate Court on notice that he was asserting a federal claim.  (Doc. No. 13 at 9.)  He does not otherwise address the issue of procedural default.

**1.     Ground I**

It is well-settled that, in order to preserve a claim for habeas review in federal court, a "petitioner must present his claim to the state courts as a federal constitutional issue - not merely as

an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  The Sixth Circuit has held a petitioner can meet this requirement in four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Ground One of Beckwith's Petition alleges that inclusion of an unadmitted statement from a trial witness with materials provided to the jury constitutes reversible error.  (Doc. No. 1 at 5.) Beckwith asserts that because he cited a federal case in his appellate brief, he presented his claim to the state court as a federal constitutional issue.  (Doc. No. 13 at 9.)  This case, *United States v. Barnes*, 747 F.2d 246 (4th Cir. 1984), is cited in the section of his brief to the State Appellate Court relating to Ground One of his Petition.  *United States v. Barnes* applies federal constitutional analysis to that issue, explaining that "there is a presumption of prejudice where such improper evidence has been made available to the jury, and the burden is on the government to prove that it is harmless." *United States v. Barnes*, 747 F.2d 246, 251 (4th Cir. 1984), *citing Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *United States v. Bassler*, 651 F.2d 600 (8th Cir. 1981); *United States v. Howard*, 506 F.2d 865 (5th Cir. 1975).  However, Beckwith did not cite any federal cases, or otherwise raise the federal constitutional claim in his Motion for Reconsideration or Hearing *en banc* at the appellate level, or his appeal to the Ohio Supreme Court.

The initial State Appellate Court decision addressed this Ground as an issue of state law, noting that:

> {¶ 16} In his third assignment of error, Beckwith argues that a witness's statement,
> that was not admitted into evidence, was included with the admitted exhibits and

14

given to the jury and created a presumption of prejudice that warrants a new trial. "Generally, the law in this area is settled; if there is the slightest possibility that harm could have resulted from the jury's viewing of unadmitted evidence, then reversal is mandatory." State v. Allen, 8th Dist. Cuyahoga Nos. 43687 and 43688, 1983 Ohio App. LEXIS 13695, 1983 WL 5914 (Apr. 7, 1983). However "the burden is on the defendant to show that he has been prejudiced or harmed by the admittance of the evidence to the jury." *State v. Barnes*, 8th Dist. Cuyahoga No. 90690, 2008 Ohio 5602, ¶ 28.

{¶ 17} One of the witnesses, Hughley, gave a statement to the police prior to the trial. The transcript of that statement was inadvertently given to the jury. It is not clear how the statement was given to the jury, and the jury did not tell the court about the statement. Beckwith's appellate attorney discovered the mistake. Beckwith argues that since the jury had access to this statement, it prevented him from receiving a fair trial. He contends that the unadmitted statement contains information, such as motive, that was not testified to at trial. If that assertion was accurate, Beckwith would be correct that the unadmitted evidence is prejudicial. However, the witness's statement to the police is identical to his testimony at trial, including the possible motive. Beckwith has not shown that he was prejudiced or harmed by the admittance of the evidence to the jury. Appellant's third assignment of error is overruled.

State v. Beckwith, No. 102544, 2016 WL 542617, *4, opinion superseded on reconsideration, 2016 WL 3092091, *6 (Ohio App. 8th Dist. May 26, 2016).

In his argument for reconsideration, Beckwith did not cite any federal law, or assert that the State Appellate Court had failed to recognize the federal Constitutional issue that now asserts he raised.  Reconsideration was granted, and the same three judge panel again framed the issue in state law terms:

{¶ 25} Appellant's argument for reconsideration on the submission of Hughley's statement to the jury does not raise any issues that the court did not fully consider already. "Generally, the law in this area is settled; if there is the slightest possibility that harm could have resulted from the jury's viewing of unadmitted evidence, then reversal is mandatory." *State v. Allen*, 8th Dist. Cuyahoga Nos. 43687 and 43688, 1983 Ohio App. LEXIS 13695 (Apr. 7, 1983). However "the burden is on the defendant to show that he has been prejudiced or harmed by the admittance of the evidence to the jury." *State v. Barnes*, 8th Dist. Cuyahoga No. 90690, 2008 Ohio 5602, ¶ 28.

15

{¶ 26} One of the witnesses, Hughley, gave a statement to the police prior to the trial. The transcript of that statement was inadvertently given to the jury. It is not clear how the statement was given to the jury, and the jury did not tell the court about the statement. Beckwith's appellate attorney discovered the mistake. Beckwith argues that since the jury had access to this statement, it prevented him from receiving a fair trial. He contends that the unadmitted statement contains information, such as motive, that was not testified to at trial. If that assertion was accurate, Beckwith would be correct that the unadmitted evidence is prejudicial. However, the witness's statement to the police is nearly identical to his testimony at trial, including the possible motive. At trial, Hughley testified that the motive for Beckwith murdering the victim is that "Ronald and his cousin was mad. That's the rumor before I even got locked up, that that's why [the victim] had got killed because [the victim] had a younger guy * * *. [The victim] had younger guys that was staying in his apartment that was selling drugs or whatever, whatnot, and [the victim] and Linda and Chrissy now was making runs for the younger guys instead of them." (Tr. 598.) In the admitted statement, Hughley stated to the police, "[the victim] was letting some younger dudes to use his house and sell drugs. [The victim] and Chrissy were runners. They knew who smoked. The younger boys had better drugs than Ronald Beckwith. All the money on the street was going to Rob's house." The possible motive from these two statements is nearly identical and does not prejudice Beckwith.

*State v. Beckwith*, No. 102544, 2016 WL 3092091, *6 (Ohio App. 8th Dist. May 26, 2016).  Again, Beckwith did not cite any federal law, or assert that the State Appellate Court had failed to recognize the existence of a federal Constitutional issue in his appeal to the Ohio Supreme Court, which declined jurisdiction.  (Doc. No. 9-1, Ex. 23.)

The State Appellate Court properly addressed Ground One as an issue of state law because that is how Beckwith presented it.  The State Appellate Court found that the statement attached to the exhibits did not contain anything more than was presented at trial, and so Beckwith was not prejudiced by the error.  While this conclusion is disputable - and indeed, the State Appellate Court decision contains a dissent - the State Appellate Court's interpretation of Ohio law is binding on this federal habeas Court.  *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

16

Contrary to Beckwith's assertion, a citation to a single federal case at the initial level of appeal does not "fairly present" a federal claim.  Courts in this district have held that a petitioner procedurally defaults claims unless they are appealed to each level of the Ohio appellate courts: "In order to preserve his constitutional claims for habeas corpus review, a habeas corpus litigant must raise each constitutional claim in the appropriate forum and present those claims all the way through the Ohio courts." *Porter v. Konteh*, No. 3:07-CV-03354-JRA, 2009 WL 4282911, at *10 (N.D. Ohio Nov. 30, 2009), citing *Trent v. Wilson*, No. 5:06cv2422, 2007 WL 4246297 at * 12 (N.D. Ohio Nov.28, 2007); *Richter v. Jefreys*, No. 1:05cv2465, 2007 WL 2572250 at *14 (N.D. Ohio Aug. 31, 2007; *Gordon v. Bradshaw*, No. 1:04cv2299, 2007 WL 496367 at *13 (N.D. Ohio Feb.12, 2007); *Hilton v. Anderson*, No. 5:05cv2010, 2006 WL 3423873 at *6 (N.D. Ohio Nov. 28, 2006) (citing *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001)).  Here, even assuming, *arguendo*, that Beckwith fairly presented his federal claim to the State Appellate Court in the first instance, he did not seek redress from their failure to recognize that claim in his motion for reconsideration and did not raise it in his appeal to the Ohio Supreme Court.

For the foregoing reasons, the Court finds Beckwith's claim regarding inclusion of an unadmitted statement from a trial witness with materials provided to the jury as raised in Ground One of his Petition is procedurally defaulted.  Beckwith may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.  However, Beckwith makes no argument regarding any of these issues.  His Traverse argued only that the first Ground of his Petition was not procedurally defaulted because his first appellate brief cited a single federal case.  (Doc. No. 13 at 9.)  He does not assert the existence of

17

either cause or prejudice.  Nor does he assert that he is actually innocent, or offer "new reliable evidence" of his innocence as that standard requires.  *Schlup*, 513 U.S. at 324.  Thus, the Court finds Beckwith has failed to establish cause or prejudice to excuse the default, or establish that failing to review this claim will result in a fundamental miscarriage of justice.

In light of the above, the Court finds Ground One as set forth in the Petition is procedurally defaulted.  Moreover, Beckwith failed to established cause and prejudice to excuse the default and has not come forward with any evidence of "actual innocence." Accordingly, the Court will not reach the merits of his first Ground for Relief.

### 2.     Ground II

Ground Two of Beckwith's Petition asserts that the state was allowed to elicit multiple hearsay statements from witnesses at trial.  (Doc. No. 1 at 7.)  His Traverse did not acknowledge or address the Respondents' assertion that he had failed to present this claim as an issue of state law. A review of the record shows that his appellate briefs at the Court of Appeals for the Eighth Judicial District presented Ground Two as a potential violation of Ohio Rule of Evidence 802, and relied on state cases applying state law regarding what constitutes hearsay.  (Doc. No. 9-1, Ex. 11 at 112-13; Ex. 14 at 175-76.)

Considering this issue, the Court of Appeals for the Eighth Judicial District found that:

{¶ 15} "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). During the trial, one witness testified that he was threatened by Beckwith's cousin and told not to speak about what he saw. The other witness did not specifically say who threatened him, but that he was threatened on the street regarding speaking with the cops. Despite what Beckwith argues, both of these witnesses were threatened directly. They did not hear about the threats from someone else. This does not constitute hearsay. Appellant's second assignment of error is overruled.

18

*State v. Beckwith*, No. 102544, 2016 WL 542617, *4, opinion superseded on reconsideration, 2016 WL 3092091, *6 (Ohio App. 8th Dist. May 26, 2016).

Next, Beckwith sought reconsideration or *en banc* review from the State Appellate Court, arguing in part that the court's decision on Ground Two conflicted with prior rulings.  The same three judge panel disagreed, again addressing this issue exclusively in terms of state law:

> {¶ 23} Despite what Beckwith argues, the facts in Beckwith's case are not analogous to the facts in Jones or In re S.R.L. "First, threats are 'verbal acts' which are not hearsay ." *State v. Skipper*, 2d Dist. Montgomery No. 25404, 2013 Ohio 4508, ¶ 14. "Threats are offered to prove the words were spoken rather than to prove the truth of the statement. The very act of uttering the words constitutes the threat whether or not the declarant actually intended to act in the manner described in the threat." *Id. See, e.g., State v. Smith*, 87 Ohio St.3d 434, 721 N.E.2d 93 (2000); *Bryant v. Spear Hardy*, 2d Dist. Montgomery No. 23449, 2010 Ohio 1903, ¶ 37; *Hemphill v. Dayton*, 2d Dist. Montgomery No. 23782, 2011 Ohio 1613, ¶ 69; and *State v. Lamb*, 12th Dist. Butler Nos. CA2002 07 171 and CA2002 80 192, 2003 Ohio 3870, ¶ 79, *citing State v. Williams*, 39 Ohio St.3d 346, 348, 528 N.E.2d 910 (1988). " 'Evidence of a threat' * * * is commonly offered to show the threat was made, rather than to prove the truth of any fact existing at or before it was made. Its relevance derives from its effect on those who heard it.'" *State v. Fort*, 8th Dist. Cuyahoga No. 56922, 1990 Ohio App. LEXIS 1773, 1990 WL 61716 (May 10, 1990).

*State v. Beckwith*, No. 102544, 2016 WL 3092091, *6 (Ohio App. 8th Dist. May 26, 2016).    The Ohio Supreme Court declined jurisdiction.  (Doc. No. 9-1, Ex. 23.)

Beckwith argues the admission of what he believes are hearsay statements violates the Ohio Rules of Evidence, thus presenting the issue as a state law claim.  Therefore, this Ground fails to state a federal constitutional claim and may not be reviewed in federal habeas corpus.  *See* 28 U.S.C. § 2254(a); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  The Ohio Court of Appeals again properly considered the issues presented by Beckwith's appeal in the context of Ohio law, and determined the statements complained of were not hearsay. This Court must accept as valid a state court's interpretation under state law of the statutes and rules of practice of that state.  *Duffel v.*

19

*Dutton*, 785 F.2d 131, 133 (6th Cir. 1986); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).    As

discussed *supra*, the Ohio court's interpretation of Ohio law is binding on this federal habeas court.

      For all these reasons, the Court finds Beckwith's hearsay claim as raised in Ground Two of

his Petition is procedurally defaulted.   As discussed *supra*, Beckwith made no argument regarding

cause for the default and prejudice resulting therefrom, or that failure to review the claim would

result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.  His Traverse did not

address the issue of procedural default in the second Ground of his Petition at all.  Nor does he assert

that he is actually innocent, or offer "new reliable evidence" of his innocence as that standard

requires.  *Schlup*, 513 U.S. at 324.   Therefore, Beckwith has failed to establish cause or prejudice

to excuse the default, or establish that failing to review this claim will result in a fundamental

miscarriage of justice.

      In light of the above, the Court finds Ground Two as set forth in the Petition is procedurally

defaulted.  Moreover, Beckwith has failed to established cause and prejudice to excuse the default

and has not come forward with any evidence of "actual innocence." Accordingly, the Court will not

reach the merits of his Second Ground for Relief.

      **3.**        **Ground III**

      Ground Three of Beckwith's Petition asserts that he was denied effective assistance of

counsel.  (Doc. No. 1 at 8.)  The Respondent asserts that Ground Three is procedurally defaulted

because although he raised an ineffectual assistance of counsel claim on direct appeal, that claim

was based on a different factual theory than the claim asserted here.  (Doc. No. 9 at 29.) Beckwith

does not address this in his Traverse.

      In his Ground Three of his Habeas Petiton, Beckwith explains the factual basis for his claim

as follows:

> I asked for witnesses on my behalf and was denied. A lady that was brought up by
> Samson Hughley and claimed he was with the day of said crime wrote a statement
> stating that she was not at the crime and my counsel never interviewed her even
> though she was the lady that runs the store the other witnesses claim to have made
> purchases at.

(Doc. No. 1 at 8.)

At the state appellate level, Beckwith asserted that his counsel was ineffective because he

failed to object to the alleged hearsay evidence referenced in Ground Two of this Petition:

> In the present matter, trial counsel failed to object to rumor and hearsay evidence
> regarding possible motive for shooting Curry and allegations that Appellant was
> threatening witnesses not to testify.  Trial counsel elicited from witness Banks that
> Curry owed Appellant money.  Further, counsel failed to examine exhibits that went
> to the jury close enough to catch that an item not in evidence went to the jury.
> Finally, and probably most importantly, trial counsel did not cross examine
> McGeever, who despite appearing in court when he was requested to by the State,
> was declared a material witness and was processed through the county jail.  This
> same witness stated on the record prior to testifying that he had no recollection of the
> incident.  Were it not for these errors, the outcome of the trial would likely have been
> different.  Therefore, Appellant was denied his right to effective assistance of
> counsel and is entitled to a new trial.

(Doc. No. 9-1, Ex. 11, at 114-15.)

At the same time, while his direct appeal was pending, Beckwith *pro se* filed two *pro se*

petitions in the State Trial Court to vacate or set aside judgment of conviction or sentence on

September 3, 2015.[3]  (Doc. No. 9-1, Ex. 24, 25.)  Here, for the first time, he asserted his trial counsel

had provided ineffective assistance for not calling defense witnesses during trial:

> 1. I asked my counsel to call several witnesses on my behalf and none was called.

The trial court denied the petitions on September 14, 2015. (Doc. No. 9-1, Ex. 26.)

---

[3]  The two petitions have identical claims.  (Doc. No. 9-1, Ex. 24, 25.)

Beckwith filed an objection to the judgment on November 2, 2015. (Doc. No. 9-1, Ex. 27.) A year and a half later, on May 19, 2017, Beckwith requested findings of fact and conclusions of law regarding the denial of his post-conviction petition. (Doc. No. 9-1, Ex. 28.) On October 6, 2017, the State Trial Court issued findings of fact and conclusions of law which found Beckwith's petition barred by *res judicata* and determined that the petition had failed to establish substantive grounds for relief, and  denied the petition without a hearing. (Doc. No. 9-1, Ex. 30.)  On June 7, 2018, the State Appellate Court affirmed the judgment of the State Trial Court.  (Doc. No. 9-1, Ex. 35.) Beckwith did not appeal.

Under Ohio law, failure to raise on direct appeal a claim that appears on the face of the record constitutes procedural default. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.1998) (citing *Ohio v. Cole*, 443 N.E.2d 169 (Ohio 1982); *Ohio v. Perry*, 226 N.E.2d 104 (Ohio 1967)). The Sixth Circuit has interpreted this to mean that if a "second ineffective assistance claim rests on a theory which is separate and distinct from the one previously considered and rejected in state court," the claim is procedurally defaulted absent a show of cause and prejudice. *Wong*, 142 F.3d at 322.

The Court finds the ineffective assistance of trial counsel claim raised in Ground Three of the Petition is procedurally defaulted.  The record reflects that, while Beckwith raised an ineffective assistance of trial counsel claim on direct appeal, that claim made no mention of the failure to call witnesses, which is the factual basis for Ground Three of the instant habeas Petition.  Rather, the ineffective assistance claim raised by Beckwith on direct appeal (to both the State Appellate Court and the Ohio Supreme Court) was solely concerned with defense counsel's failure to object to what Beckwith alleges was hearsay evidence, failure to throughly examine the exhibits sent to the jury, and failure to cross-examine a critical witness.  (Doc. No. 9-1, Ex. 11, 19, 22.)  Thus, Beckwith did

22

not raise the ineffective assistance of trial counsel claim presented in Ground Three of his Petition on direct appeal.

Beckwith's *pro se* post-conviction petitions to vacate or set aside judgment of conviction or sentence did raise an ineffective assistance of trial counsel claim based on the failure to call witnesses.  (Doc. No. 9-1, Ex. 24, 25. ) However, the state trial court denied these filings on the basis of *res judicata,* and Beckwith did not appeal this ruling.[4]  (Doc. No. 9-1, Ex. 26, 30, 35.) )  As such, the Court finds Beckwith failed to comply with an applicable state procedural rule and the state court actually enforced the procedural bar, thus satisfying the first and second prongs of *Maupin*.  Further, as to the third prong of *Maupin*, "the Sixth Circuit has stated that *res judicata* 'is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's claims.'"  *Collins v. Warden, Ross Correctional Inst*., 2014 WL 575727 at * 11 (N.D. Ohio Feb.11, 2014) (quoting *Powers v. Bobby*, 2008 WL 4823134 (N.D. Ohio Nov.3, 2008)).  *See also Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Williams v. Bagley*, 380 F.3d 932, 966  67 (6th Cir.2004); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

In light of the above, the Court finds Beckwith's ineffective assistance of trial counsel claim as raised in Ground Three of his Petition is procedurally defaulted.  Beckwith may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.  As discussed *supra*, Beckwith makes no argument in either

---

[4]  Beckwith may no longer appeal the trial court's denial of these post-conviction filings as Ohio law does not permit delayed appeals in post-conviction proceedings.  *See Nichols*, 11 Ohio St.3d at 43; *Wright*, 643 F. Supp.2d at 987-98.

his Petition or Traverse regarding any of these issues.  He does not address the issue of procedural default relating to Ground Three in his habeas filings, making no clear argument that there exists either cause or prejudice.  Nor does he assert that he is actually innocent of the crimes for which he was convicted, or offer "new reliable evidence" of his innocence as that standard requires.  *Schlup*, 513 U.S. at 324.   Therefore, Beckwith has failed to establish cause or prejudice to excuse the default, or establish that failing to review this claim will result in a fundamental miscarriage of justice.

In light of the above, the Court finds Ground Three as set forth in the Petition is procedurally defaulted.  Moreover, Beckwith has failed to established cause and prejudice to excuse the default and has not come forward with any evidence of "actual innocence."  Accordingly, the Court will not reach the merits of this Ground for Relief.

### V. Conclusion

For all the reasons set forth above, in light of the fact that all three ground of Beckwith's petition are procedurally defaulted, it is recommended that the Petition be DISMISSED.


Date:   April 30, 2020                                  *s/ Jonathan Greenberg*
                                                        Jonathan D. Greenberg
                                                        United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

24